IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADRIAN ALVAREZ,                    : Civil No. 1:25-CV-2451
                                   :
   Plaintiff,                     :
                                   :
      v.                        :
                                   : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                   :
Commissioner of Social Security,   :
                                   :
   Defendant.                     :

## MEMORANDUM OPINION

### I.   Introduction

Adrian Alvarez filed an application under Title II of the Social Security Act for disability and disability insurance benefits on March 16, 2023.[1]  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Alvarez was not disabled from his alleged onset date of January 1, 2022, through August 21, 2025, at which point he reached "advanced age," vocational adversities infringed on his ability to work, and he became disabled from that date forward.[2]

---

[1] Tr. 185.
[2] Tr. 939.

Alvarez now appeals the portion of the decision finding that he was not entitled to benefits for the period of January 1, 2022, through August 21, 2025. Alvarez argues that portion of the decision is not supported by substantial evidence. After a review of the record, we agree and conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.  Statement of Facts and of the Case

Alvarez filed for disability and disability insurance benefits alleging disability due to post-traumatic stress disorder ("PTSD"), neck surgery, left shoulder surgery, umbilical hernia surgery, gowning hernia, leukemia, left knee surgery, sleep apnea, and spinal fusion.[3] Alvarez was 51 years old at the time of his alleged onset of disability, had at least a high school education, and had previously worked as a military recruiter.[4] [5]

---

[3] Tr. 186.

[4] Tr. 939.

[5] Alvarez did not outline the pertinent medical/vocational evidence of record in his brief as required by local rules. *See* M.D. Pa. L.R. 83.40.4(a). We will therefore forego recitation of the administrative record, except to

An ALJ held a hearing on Alvarez's disability application on August 4, 2025.[6] Alvarez and a Vocational Expert ("VE") both appeared and testified at this hearing.[7] Following this hearing, on August 21, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[8] The ALJ first concluded that Alvarez had not engaged in substantial gainful activity since his alleged onset date of January 1, 2022.[9] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of cervical radiculopathy status-post cervical fusions, cervical disc disorder with radiculopathy, history of leukemia status-post chemotherapy treatment in remission, PTSD, persistent depressive disorder, anxiety disorder, and attention and concentration deficits.[10] At Step 3, the ALJ

---

say that the record contains medical records and medical opinion evidence, which the ALJ found supported the existence of three severe physical impairments, four severe mental health impairments, and four non-severe impairments.

[6] Tr. 952-70.

[7] *Id.*

[8] Tr. 922-43.

[9] Tr. 925.

[10] Tr. 926.

3

concluded that none of these impairments met or equaled the severity of

a listed impairment under the Commissioner's regulations.[11]

Between Steps 3 and 4, the ALJ then concluded that Alvarez:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant: could occasionally climb ladders, ropes, and scaffolds; could frequently kneel and crouch; could occasionally crawl; could frequently reach overhead with the left upper extremity; can understand, remember, and carry out simple instructions; can perform work without a specific production rate/pace, such as assembly line work or work with hourly production quotas; can deal with occasional changes in a routine work setting; and can have occasional interaction with coworkers, supervisors, and the public.[12]

In reaching this residual functional capacity ("RFC")

determination, the ALJ considered the objective medical record, the

medical opinion evidence, and Alvarez's reported symptoms. With

respect to the medical opinion evidence,[13] the ALJ found Dr. Ziba

Monfared's opinion "significantly persuasive [.]"[14] Dr. Monfared opined

---

[11] Tr. 926-30.

[12] Tr. 930.

[13] Because Alvarez's appeal focuses exclusively on physical health and vocational findings, we will forego a discussion of the mental health opinions.

[14] Tr. 934.

4

that Alvarez could lift and carry up to 20 pounds occasionally and up to ten pounds frequently; sit for eight, stand for seven, and walk for five hours in an eight hour work day (standing up to four and walking up to two hours at once); occasionally reach, push, and pull with his left upper extremity ("LUE"); occasionally use the left lower extremity to operate foot controls; occasionally climb, balance, stoop and kneel; never crouch; occasionally tolerate exposure to unprotected heights, moving mechanical parts, extreme cold, and vibrations; and frequently operate a motor vehicle.[15]  The ALJ stated that this opinion was supported by the medical record (specifically, exhibits 1F-4F and 6F) and consistent with Alvarez's testimony and the medical records.[16]

The ALJ also considered the opinions of Drs. John Gerome Bertolino and Chan Kun Chung.  The ALJ discussed these opinions together.[17]  Dr. Bertolino opined that Alvarez could lift and carry up to 20 pounds occasionally and up to ten pounds frequently; sit, stand, and walk up to six hours in an eight hour work day; frequently climb ladders,

---

[15] *Id.*

[16] *Id.*

[17] Tr. 936.

ropes, and scaffolds; frequently kneel, crouch, and crawl; and frequently reach overhead with his LUE.[18] Dr. Chung concurred with Dr. Bertolino on lifting, carrying, sitting, standing, walking, kneeling, crouching, and reaching overhead with his LUE, but found Alvarez could only occasionally climb ladders, ropes, and scaffolds and only occasionally crawl.[19]  The ALJ found these opinions persuasive but, rather than analyze their supportability and consistency independently, stated both opinions were persuasive "based upon the same explanation utilized in the opinion analysis of Dr. Monfared."[20]

With respect to Alvarez's symptoms, the ALJ found that Alvarez's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence.[21] The plaintiff testified that despite his leukemia being in remission, it still caused him to feel fatigue and "fogginess."[22]  He explained how back pain, neck pain, and headaches made sleeping and doing chores around the

---

[18] Tr. 936, 178-81.
[19] Tr. 936, 190-91.
[20] Tr. 936.
[21] Tr. 932.
[22] Tr 960-61.

6

house "almost impossible."[23]  He discussed his postural limitations, his difficulty keeping up with relationships, and his infrequent driving.[24]

The ALJ ultimately found Alvarez's testimony to be inconsistent with the objective clinical findings.[25]  The ALJ recounted the objective evidence during the alleged disability period, including, *inter alia*, a cranial MRI that showed no abnormalities and x-rays showing degenerative cervical changes.[26]  The ALJ also noted evidence that Alvarez's leukemia was in remission, he did not develop neuropathy from chemotherapy, his LUE strength was 4/5, and despite some walking difficulties he had a normal gait and stance and did not need an assistive device.[27]  Ultimately, the ALJ concluded that Alvarez was not as limited as he alleged.

Having made these findings, the ALJ found at Step 4 that Alvarez could not perform his past work but found at Step 5 that he could perform

---

[23] Tr. 961.
[24] Tr. 963-64.
[25] Tr. 932.
[26] Tr. 932.
[27] *Id.*

7

the occupations of housekeeper/cleaner, router, and marker.[28] Accordingly, the ALJ found that Alvarez had not met the stringent standard prescribed for disability benefits and denied his claim.[29]

This appeal followed. On appeal, Alvarez argues that the ALJ improperly considered certain medical opinions, and that the occupation of "marker" is obsolete. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will remand this matter for further consideration by the Commissioner.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[30] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[28] Tr. 940.

[29] Tr. 941.

[30] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

adequate to support a conclusion."[31]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[32]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[33]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[34]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[35]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[31] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[32] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[33] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[34] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[35] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

support a conclusion.'"[36]    Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[37]    Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[38]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[39]    Thus, we cannot re-weigh the evidence. Instead, we must determine whether

---

[36] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[37] *Id.*

[38] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[39] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

10

there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[40]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[41]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[42]

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

---

[40] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[41] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[42] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

than 12 months."[43]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[44]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[45]

In making this determination, the ALJ follows a five-step evaluation.[46]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[47]

---

[43] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[44] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[45] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[46] 20 C.F.R. §§404.1520(a), 416.920(a).
[47] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[48] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[49] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[50]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[51] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[48] *Burnett,* 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[49] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[50] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[51] *Mason,* 994 F.2d at 1064.

13

consistent with the claimant's RFC, age, education, and work experience.[52]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[53]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[54]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically

---

[52] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[53] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[54] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[55]  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[56]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[57]

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the

---

[55] *Biller*, 962 F. Supp. 2d at 778–79.
[56] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[57] *Burns,* 312 F.3d 113.

claimant, specialization, and other factors tending to support or contradict a medical opinion.[58] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[59] Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[60] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[61]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[62] When confronted with several medical opinions, the ALJ can choose to credit certain opinions

---

[58] 20 C.F.R. § 404.1520c(c).

[59] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[60] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[61] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[62] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

over others but "cannot reject evidence for no reason or for the wrong reason."[63]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[64]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[65]

### D.    This Case will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[66] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[67]  After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

---

[63] *Mason*, 994 F.2d at 1066.

[64] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[65] *Cummings*, 129 F. Supp. 3d at 214–15.

[66] *Cotter*, 642 F.2d at 704.

[67] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Alvarez argues that because the ALJ found Dr. Monfared's opinion persuasive, the ALJ was obligated to either include, or explain the omission of, all limitations opined necessary by Dr. Monfared. We agree.[68]

Alvarez identifies six limitations he says the ALJ failed to include or explain the omission thereof.[69] We note the ALJ, pursuant to a prior

---

[68] *See Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (remanding where the ALJ "failed to mention or refute some of the contradictory medical evidence before him ... failure to mention and explain this contradictory evidence was error."); *see also Mattox v. Kijakazi*, 2023 WL 5943135, at *7 (M.D. Pa. Sep. 12, 2023) ("Despite finding that the consultants' opinions were persuasive, the ALJ did not include any standing/walking limitations ... [while] the ALJ was not bound ... to adopt all the limitations, he was required to explain his basis for [not] doing so."); *Simon v. Kijakazi*, 2022 WL 828935, at *9 (M.D. Pa. Mar. 18, 2022) (remanding because a "limitation contained within ... an opinion deemed persuasive by the ALJ, was not addressed or incorporated into the RFC in any meaningful fashion."); *Evantis v. Berryhill*, 2018 WL 1465276, at *11 (M.D. Pa. Feb. 28, 2018) ("[T]he ALJ was by no means bound by Dr. Feinstein's opinion on [claimant's] limitations, and was not required to adopt all of the limitations, [but] she was required to explain her basis for doing so."); *Hines v. Colvin*, 2015 WL 8489970, at *13 (M.D. Pa. Dec. 9, 2015) ("[T]he ALJ did not provide an explanation as to why these limitations, which were contained within opinions the ALJ gave great weight to and held were supported by and consistent with the record, were not included in the RFC ... substantial evidence does not support the ALJ's RFC determination due to the exclusion of these limitations.").
[69] Doc. 7 at 8-9.

remand in this matter, did explain the departure with regard to, *inter alia*, light work generally, postural limitations including crouching, and reaching overhead with the LUE.[70]  But he did not explain the omission of two of Dr. Monfared's opined limitations.  First, that Alvarez could only "occasionally" push and pull with his LUE.[71]  Second, that Alvarez should be limited to occasional operation of foot controls.[72]  By finding Alvarez capable of light work, the ALJ contradicted these limitations from a persuasive medical opinion without explanation.  That error is not harmless, because the statutory definition of light work includes the ability to frequently push and pull "arm or leg controls."[73]

The lack of explanation frustrates the task of judicial review.  On this record, we cannot say if substantial evidence supports the ALJ's

---

[70] Tr. 936-37.

[71] Tr. 765.

[72] *Id.*

[73] 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.")

conclusion that Alvarez has the residual functional capacity for light work, or if the unincorporated limitations to pushing, pulling, and using leg controls would disqualify Alvarez for some, or perhaps all, light work.[74] Accordingly, remand is required for further consideration of this issue.[75]

While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

---

[74] *Burnett*, 220 F.3d 123 ("Because the ALJ erred in not evaluating all of the medical evidence, this Court cannot now assess whether the ALJ's determination that [claimant] has the residual functional capacity to perform 'light' work was supported by substantial evidence[.]").

[75] While we are remanding on this specific issue, we are constrained to note that the plaintiff's argument concerning the ALJ's supportability analysis is also well taken. It appears that the ALJ improperly addressed the supportability of the medical opinions using the criteria for consistency, *i.e.*, discussing the opinion's consistency with other sources, rather than the criteria for supportability, *i.e.*, internal references to support for the opinion.

An appropriate order follows.

Submitted this 6th day of July 2026.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

21